## NORTON SHORES v CARR

1. NUISANCE—USE OF PROPERTY—ZONING—CONFORMING USES—NON-CONFORMING USES—STRUCTURES AND PLOTS—WORDS AND PHRASES.

The term "nonconforming use" in zoning cases comprehends the physical characteristics, dimensions, or location of a structure as well as the functional use thereof or of the premises on which it is located, and is used as a generic term that includes nonconforming use of conforming structures and plots, nonconforming use of nonconforming structures and plots, and conforming use of nonconforming structures and plots.

2. ZONING—NONCONFORMING USE—EXPANSION—ORDINANCES.

Generally, a nonconforming use may not be expanded; one of the goals of zoning is the eventual elimination of nonconforming uses so that growth and development sought by ordinances can be achieved.

3. ZONING—NONCONFORMING USES—CONTINUATION.

The continuation of a nonconforming use must be substantially of the same size and same essential nature as the use existing at the time of passage of a valid zoning ordinance; therefore, a nonconforming use is restricted to the area that was nonconforming at the time the ordinance was enacted.

REFERENCES FOR POINTS IN HEADNOTES

[1] 82 Am Jur 2d, Zoning and Planning §§ 3, 178 *et seq.*
[2] 82 Am Jur 2d, Zoning and Planning §§ 179, 180, 196–199.
[3] 82 Am Jur 2d, Zoning and Planning § 188 *et seq.*
[4] 5 Am Jur 2d, Appeal and Error §§ 703, 772.
[5] 82 Am Jur 2d, Zoning and Planning §§ 184, 215, 216.
[6] 82 Am Jur 2d, Zoning and Planning §§ 3, 186.
[7] 82 Am Jur 2d, Zoning and Planning § 3.
[8] 58 Am Jur 2d, Nuisances §§ 11–13.
[9] 82 Am Jur 2d, Zoning and Planning §§ 3, 191–207.
[10] 58 Am Jur 2d, Nuisance §§ 136–139, 173, 174.
[11] 5 Am Jur 2d, Appeal and Error §§ 703, 772.
[12] 58 Am Jur 2d, Nuisance § 150 *et seq.*
[13] 58 Am Jur 2d, Nuisance § 151.
[14] 82 Am Jur 2d, Zoning and Planning § 178 *et seq.*

4. EQUITY—APPEAL AND ERROR—DE NOVO REVIEW—TRIAL COURT FINDINGS—AGREEMENT—DIFFERENT RESULT.

The Court of Appeals reviews equity cases *de novo;* however, the findings of the trial judge will not be disturbed on appeal unless the appellate court can conclude that it would have arrived at a different result had it been in the position of the trial court.

5. ZONING—NONCONFORMING PRIOR USE—EVIDENCE—INTENT—ABANDONMENT.

The necessary elements of abandonment of a nonconforming use are the intent to abandon and some act or omission on the part of the owner or holder which clearly manifests his or her voluntary decision to abandon.

6. NUISANCE—ZONING—NONCONFORMING PRIOR USE—VESTED RIGHTS —TRIAL COURT FINDINGS.

The existence of a vested right to a prior nonconforming use does not preclude a court from finding that the nonconforming use constitutes a nuisance.

7. NUISANCE—PRIVATE NUISANCE—PUBLIC NUISANCE—DEFINITIONS.

Nuisances may be private or public or both: a private nuisance is a civil wrong based on a disturbance of defendants' neighbors' rights in their land; a public nuisance results from an interference with the rights of the community at large.

8. NUISANCE—NUISANCE IN FACT—NUISANCE PER SE—CIRCUMSTANCES—LOCATION AND SURROUNDINGS.

A nuisance in fact and a nuisance at law, or per se, are distinguishable; a nuisance in fact is that which becomes a nuisance by reason of circumstances and surroundings and a nuisance per se is an act, occupation or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings.

9. NUISANCE—NONCONFORMING USE—CHANGES IN USE—EXTENSION OF NONCONFORMING USE.

Changing the nature and size of a nonconforming use constitutes an extension of a prior nonconforming use and is therefore a nuisance.

10. NUISANCE—NUISANCE IN FACT—TRIAL COURT FINDINGS—EVIDENCE—CLEAR ERROR RULE.

A finding of a nuisance in fact is not clearly erroneous where there is sufficient credible evidence to support the trial court's conclusion.

11. APPEAL AND ERROR—LIMITED REVIEW—COURT DECIDED ISSUES.

The Court of Appeals is limited on review to issues decided by the trial court.

12. NUISANCE—EQUITY—ABATEMENT OF NUISANCE—JUDICIAL POLICY.

An equity court has the power to enjoin a nuisance; however, it is the policy of the courts to tailor the remedy to the problem and where possible to abate a nuisance without completely destroying the business in which the nuisance originates.

13. EQUITY—NUISANCE—ABATEMENT—CONTINUING BUSINESS—OBJECTIONABLE FEATURES—INFRINGEMENT ON RIGHTS.

Equity will not abate a lawful continuing business as a nuisance when it is possible to eliminate objectionable features which infringe upon the ordinary rights of others.

14. MUNICIPAL CORPORATIONS—REGULATORY ORDINANCES—ZONING ORDINANCES—NONCONFORMING USE—PRIOR NONCONFORMING USE—EXPANSION OF USE.

A regulatory ordinance, unlike a zoning ordinance, is not encumbered by a nonconforming use provision and while a preexisting nonconforming use may exist despite a zoning ordinance, a regulatory ordinance envisions no similar exceptions; therefore, neither an original nonconforming use, nor an expansion of it, excuses the enforcement of a regulatory ordinance.

Appeal from Muskegon, Charles A. Larnard, Jr., J. Submitted January 4, 1978, at Grand Rapids. (Docket No. 77-611.) Decided March 7, 1978. Leave to appeal applied for.

Complaint by Norton Shores, a municipal corporation, and others against Cornelius Carr and Rose I. Carr seeking abatement of a public and private nuisance and an injunction requiring the defendants to conform to certain ordinances. Judgment for plaintiffs. Defendants appeal. Affirmed.

*Parmenter, Forsythe & Rude* (by *Steven G. Schember*), for plaintiff.

*Bunker & Rogoski,* for defendant.

Before: D. F. WALSH, P. J., and R. M. MAHER and BEASLEY, JJ.

PER CURIAM. Defendants appeal the judgment of the trial court holding defendants' landscaping business, which constitutes a nonconforming use, to be a nuisance. The court ordered it enclosed by a fence. Defendants' junkyard business, which is also a nonconforming use, was restricted to a certain portion of the defendants' property. Finally, the trial court found that defendants' used car business—another nonconforming use—had been abandoned.

On July 24, 1972, plaintiffs filed a complaint charging defendants with violation of a city junkyard ordinance, a zoning ordinance, and an abandoned-vehicle ordinance, and with maintaining a public and private nuisance. Defendants own a parcel of land in Norton Shores which they purchased in 1945. Defendants deal in junk, that is, they buy and sell scrap iron, rags, batteries, used equipment and machinery. They also carry on a landscaping business for which they store top soil (black dirt), shrubbery, and other nursery items.

In 1949, Norton Shores Township, predecessor of the City of Norton Shores, adopted a junkyard resolution. At that time defendants had already acquired a vested right to continue operation of the junkyard in the same manner in which it had been conducted before adoption of the resolution.

On January 1, 1955, the township of Norton Shores adopted its first zoning ordinance which provided for the continuance of nonconforming uses and buildings. In 1962, the township amended the zoning ordinance, as a result of which the west 200 feet of defendants' lot was zoned commercial. It was stipulated that during the time immediately

before the adoption of the Norton Shores zoning ordinance, defendants operated heavy machinery in conducting their business.

Defendants charge that the trial court erred in failing to conclude that defendants have a vested right to continue the use of their real estate in the manner in which it was used before the adoption of the Norton Shores zoning ordinance. The restrictions imposed by the court, defendants argue, are repugnant to their vested right.

Contrary to defendants' contention, the trial court did hold that defendants' nonconforming uses could be continued as they were practiced before adoption of the Norton Shores zoning ordinance in 1955. That was not an issue at trial. All agreed defendants had a valid nonconforming use. The issue was whether defendants had unlawfully expanded their use beyond the scope that existed at the time the zoning ordinance was adopted. The judgment restricted use of the eastern 200 feet of defendants' property solely to the landscaping business; this line of demarcation was established in accordance with trial testimony which disclosed that in 1955 defendant had no other business operations except landscaping on the eastern 200 feet of their property.

" 'A "nonconforming use" comprehends the physical characteristics, dimensions, or location of a structure as well as the functional use thereof or of the premises on which it is located, and is used as a generic term that includes nonconforming use of conforming structures and plots, nonconforming use of nonconforming structures and plots, and conforming use of nonconforming structures and plots.' (Footnotes omitted.) 82 Am Jur 2d, Zoning and Planning, § 178, p. 685." *Long Island Court Homeowners Association v Methner,* 74 Mich App 383, 387; 254 NW2d 57 (1977).

Expansion of a nonconforming use is severely restricted. One of the goals of zoning is the eventual elimination of nonconforming uses, so that growth and development sought by ordinances can be achieved. Generally speaking, therefore, nonconforming uses may not expand. *Fredal v Forster,* 9 Mich App 215; 156 NW2d 606 (1967), *Hillsdale v Hillsdale Iron & Metal Co, Inc,* 358 Mich 377; 100 NW2d 467 (1960). The policy of the law is against the extension or enlargement of nonconforming uses, and zoning regulations should be strictly construed with respect to expansion.

" '[I]t is the law of Michigan that the continuation of a nonconforming use must be substantially of the same size and same essential nature as the use existing at the time of passage of a valid zoning ordinance.' " *Dearden v Detroit,* 70 Mich App 163, 169; 245 NW2d 700 (1976), *Township of White Lake v Lustig,* 10 Mich App 665, 674; 160 NW2d 353 (1968).

The nonconforming use is restricted to the area that was nonconforming at the time the ordinance was enacted. *Township of Commerce v Rayberg,* 5 Mich App 554; 147 NW2d 453 (1967).

In 1955, the trial court opined, the eastern 200 feet of defendants' property was not being used for a junkyard as it was 20 years later. In accordance with Michigan law on the expansion of nonconforming uses, the trial judge restricted defendants' use of the eastern 200 feet and held it could only be used for defendants' landscape business which had been in operation when the zoning ordinance was adopted. While this Court reviews equity cases *de novo,* it will not disturb the findings of the trial court unless it would have arrived at a different result had it been in the position of the trial court.

*Biske v City of Troy,* 381 Mich 611; 166 NW2d 453 (1969).

We cannot say we would have reached a conclusion different from that of the trial court. Defendants had a valid nonconforming use in 1955, but they had no right to expand that nonconforming use beyond its 1955 scope. The trial court acted properly in restricting the use of the eastern 200 feet of defendants' land.

Also at issue are the trial court's other rulings: (1) that defendants had abandoned their rights to deal in used cars; (2) that defendants had created a nuisance by causing black dirt dust to emanate from their property; and (3) that plaintiffs were entitled to injunctive relief from the alleged dissemination of black dirt.

Turning first to defendants' abandonment of their used car sales: the necessary elements of abandonment of a nonconforming use are intent and some act or omission on the part of the owner or holder which clearly manifests his or her voluntary decision to abandon. *Rudnik v Mayers,* 387 Mich 379; 196 NW2d 770 (1972). The trial court's ruling as to abandonment was not without grounds. An examination of defendants' tax returns for several years showed "no indication of used car sales operation." Nor did any witnesses at trial testify to any used car sales. On these bases the court found the used car operation had been abandoned. We cannot say that had we been sitting as the trial court we would have reached a different result. The finding was not clearly erroneous.

The trial court also held that defendants' soil farm operations on their property caused black dirt dust to blow onto the property of abutting owners, thus creating a nuisance. Defendants

claim this finding is repugnant to their vested right to continue their nonconforming use. But the existence of a vested right to a prior nonconforming use does not preclude a court from finding that the nonconforming use constitutes a nuisance. *Dusdal v City of Warren,* 387 Mich 354; 196 NW2d 778 (1972).

Nuisances may be private or public. *Awad v McColgan,* 357 Mich 386; 98 NW2d 571 (1959). The nuisance at issue here is both: a civil wrong based on a disturbance of defendants' neighbors' rights in their land and an interference with the rights of the community at large. *Williams v Primary School District #3, Green Township,* 3 Mich App 468; 142 NW2d 894 (1966). A nuisance in fact must be distinguished from a nuisance at law, also called a nuisance per se. A nuisance in fact is that which becomes a nuisance by reason of circumstances and surroundings. A nuisance per se is an act, occupation or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings. *Buddy v Department of Natural Resources,* 59 Mich App 598; 229 NW2d 865 (1975), *Marshall v Consumers Power Co,* 65 Mich App 237; 237 NW2d 266 (1975).

Changing the nature and size of a nonconforming use constitutes an extension of a prior nonconforming use and is therefore a nuisance. *Township of White Lake v Lustig, supra.* In the instant case, the trial judge concluded that defendants' nonconforming use had been expanded. Such expansion is a nuisance per se. *Township of White Lake v Lustig, supra.*

The trial testimony also supports a finding of nuisance in fact. Plaintiffs presented credible evidence sufficient to prompt a court to conclude that the black dirt dust emanating from defendants'

property and being carried to neighbors properties was a nuisance in fact. Again, we are not able to say nor have defendants persuaded us that the trial court was clearly erroneous.

Defendants also contend that plaintiffs were estopped from seeking injunctive relief and that the trial court therefore erred in granting it. Reliance is placed on *Mackenzie v Frank M Pauli Co,* 207 Mich 456; 174 NW 161 (1919). Defendants' reliance is misplaced. The Court in *Mackenzie,* in fact, found that a nuisance existed but limited the scope of the injunction to the offensive features of defendants' business. The Court held that expansion of defendants' business, regardless of whether it was in the area before the plaintiffs were, constituted a nuisance. The plaintiffs in *Mackenzie* were not estopped from seeking injunctive relief, as defendants here contend. *Mackenzie,* if anything, supports the plaintiffs' position.

Defendants present a final charge of error. They claim the trial court was unwarranted in requiring defendants to build a fence around their property and in obliging them to acquire a junkyard license. Defendants argue that the judgment precludes them from using their land to the same extent as others owning land and thereby denies them equal protection.

The issue of equal protection was not raised in the pleadings nor at trial. Pursuant to GCR 1963, 801, these issues cannot be heard on appeal. The Court of Appeals is limited on review to issues decided by the trial court. *Hernandez v Consumers Power Co,* 51 Mich App 288; 214 NW2d 846 (1974), *Behlen Manufacturing Co v Andries-Butler, Inc,* 52 Mich App 317; 217 NW2d 125 (1974).

Defendants' argument that the trial court had no power to require them to build a fence is

without merit. An equity court has the power to enjoin a nuisance. *Township of White Lake v Lustig, supra*. It is the policy of our courts, however, to tailor the remedy to the problem, to abate the nuisance without completely destroying the business in which the nuisance originates. *Hillsdale v Hillsdale Iron & Metal Company, Inc, supra, Mackenzie v Frank M Pauli Co, supra.* Equity will not abate a lawful continuing business as a nuisance when it is possible to eliminate objectionable features which infringe upon the ordinary rights of others. *Kurrle v Walker,* 56 Mich App 406; 224 NW2d 99 (1974). The remedy fashioned by the trial court was tailored to fit the particular nuisance at issue. The fence will both screen the junkyard from view and help prevent the blowing of black dirt and dust.

The contention that the court had no power to require defendants to obtain a junkyard license is also without merit. Defendants claim that because they operated the junkyard as a nonconforming use before the licensing ordinance was passed they cannot be required to obtain a license. The defendants thereby equate a regulatory ordinance with a zoning ordinance.

While a preexisting nonconforming use may exist despite a zoning ordinance, a regulatory ordinance envisions no similar exceptions. A use, albeit nonconforming, is still subject to regulatory ordinances. *Casco Township v Brame Trucking Co, Inc,* 34 Mich App 466; 191 NW2d 506 (1971). Neither the defendants' original nonconforming use, nor their expansion of it, excuses them from the licensing ordinance. A regulatory ordinance is not encumbered by a nonconforming use provision.

In fashioning the remedy in this case, the court was mindful of the interests of both sides: the

nuisance is abated and yet the defendants are not completely foreclosed from operating their businesses. The remedy as fashioned suitably meets the needs of each party without destroying either side's rights.

The judgment of the trial court is affirmed.